JENKINS *v.* STATE.

(In Banc. Dec. 11, 1944.)

[19 So. (2d) 921. No. 35695.]

Sandy R. King, of Durant, for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**McGehee, J.,** delivered the opinion of the court.

The appellant Alfred Jenkins was tried and convicted of the crime of arson for the burning of a dwelling house in which his estranged wife, Mollie Jenkins, and his step-daughter were then residing.

The jury was well warranted in believing from the evidence beyond a reasonable doubt that the said defendant did in fact willfully, maliciously and feloniously set fire to and burn the house in question, but it is contended that the state failed to prove the ownership of the property as laid in the indictment, which charged that the house was "owned by Ella Horton and other heirs of Wesley Harrington, deceased, whose names are to the grand jurors unknown, but which dwelling house was then and there being occupied by Mollie Jenkins as a tenant therein and thereof."

The proof discloses that Ella Horton was formerly the wife of Wes Hanks, now deceased, who owned at the time of his death the land on which this dwelling house was situated: that Wes Hanks left one other heir at law, who was to the witnesses unknown; that said Ella Horton continued to reside on the land as a homestead for about twelve years before she married Ed Horton, and that she and Ed Horton were residing there at the time this tenant house occupied by Mollie Jenkins was burned.

The testimony was sufficient to show that the property did in fact belong to Ella Horton and one other heir of her deceased husband, and this is true without regard to whether his correct name was Wes Hanks or Wesley Harrington. No attempt was made by the state to prove that Wes Hanks and the Wesley Harrington referred to in the indictment was one and the same person, although this fact could have doubtless been established. But, be that as it may, the evidence clearly disclosed that Ella Horton and another heir, or other heirs, of her former husband owned the land and the dwelling house in question, regardless of whether it was inherited from Wes Hanks or Wesley Harrington. The allegation as to such joint ownership and the proof of such fact, when considered in connection with the further allegation in the indictment and the proof upon the trial that the house which was burned by the accused was the dwelling house of his estranged wife, Mollie Jenkins, would seem to be

sufficient to enable the defendant to successfully invoke the record of this conviction in support of a plea of former jeopardy if he should be subsequently charged with the same offense.

Moreover, the wife of the defendant is a niece of Ella Horton, and he evidently knew that the reference in the indictment to Ella Horton as being an heir of Wesley Harrington, deceased, was intended to mean that she had inherited an interest in the property from her former husband Wes Hanks. And, if it should be contended that even though the accused may have been satisfied in his own mind as to the nature and character of the accusation against him as laid in the indictment, nevertheless the language thereof should have been sufficient on its face to correctly identify the property burned so as to enable him to invoke a conviction under such indictment in support of a plea of former jeopardy in the event he should be subsequently prosecuted for the burning of the said dwelling house, the objection would be answered by the fact that both the indictment and the proof point out the property in particular that he was accused of burning in that it was both alleged and proved that it was the dwelling house "then and there being occupied by Molly Jenkins." There is no suggestion of ownership in any other person than Ella Horton and the unknown heir, or unknown heirs, of her former husband, whether he was Wes Hanks or Wesley Harrington, or that any other person had any kind of interest in or title to the same.

It is unlawful to burn the dwelling house of another, even though the title thereto may be involved in litigation, and in such case it could not reasonably be required that the state should litigate the question of such disputed ownership with the defendant in the trial of a criminal case when the state is otherwise able to sufficiently identify the property in the indictment and under the proof in such manner as to clearly enable the accused to invoke such indictment and the record of his conviction thereunder in support of a plea of former jeopardy if subse-

quently charged with the same unlawful act. It may be said, however, that the foregoing observation can not be applicable here since it was not disclosed that the ownership of the house was in dispute, and that the state could have shown the true status of the title without difficulty. But the principle contended for on this appeal by the appellant to the effect that the state must establish the true state of the legal title at all events would apply with equal force to the situation where the title is in litigation, and a guilty party would be allowed to go free because of the inability of the state to meet such requirement by proof more substantial than that hereinbefore set forth. To require the state to assume a greater burden than has been met by it in the instant case in an effort to enforce the criminal laws in this enlightened age of ours would appear to be highly technical, since no good reason can be assigned for the requirement that the ownership of the property burned shall be both alleged and proved other than the reason that the defendant is entitled to be advised of the charge that he is called on to meet and to be able to plead the record of his trial and conviction, or of his acquittal, if again called on to answer a similar charge for the commission of the same crime.

It is true the Court held in the cases of Morris v. State (Miss.), 8 So. 295; Avant v. State, 71 Miss. 78, 13 So. 881; Sheedy v. State, 152 Miss. 82, 118 So. 372; Hardy v. State, 167 Miss. 739, 149 So. 881; and West v. State, 169 Miss. 302, 152 So. 888, that in an indictment for arson it is necessary to allege, and upon the trial to prove, the ownership of the property alleged to have been maliciously and feloniously burned. But, in the case of Morris v. State the indictment charged that the accused burned "two cotton houses of the property of one W. C. Craig," whereas the proof disclosed that both houses were on the lands of W. E. and R. E. Craig, and that one of them belonged to the defendant's wife, and that another person whose name was Scott had an interest in the other. In the case of Avant v. State, the indictment charged that the

property burned was that of S. E. Holcomb, whereas the proof disclosed that it belonged to his father. In the case of Sheedy v. State [152 Miss. 82, 118 So. 373], the indictment charged that the school house alleged to have been burned was the property of the Union School District in Choctaw County, and the deed of conveyance offered to prove ownership disclosed that the title was in the "present trustees and their successors in office" of a school indicated only on the face of the deed to be the Union School. In the case of Hardy v. State, the indictment charged the accused with having burned the "Blue Ridge School House, the property of Jasper County, Mississippi, for the use and benefit of said Blue Ridge Colored School," and the deed of conveyance which was offered in evidence to prove the ownership showed that the title had been conveyed to the "trustees of the Blue Ridge Common School and their successors in office." And, in the case of West v. State, the accused was charged in the indictment with having burned the "Blue Ridge Colored Methodist Church House, the property of the Colored Methodist Conference, or the Blue Ridge Colored Methodist Church, a religious organization, organized and existing for the purpose of religious worship . . ."; and there was a demurrer "to the indictment [which this Court held] should have been sustained" as it was not proper to allege title in the alternative. And, the Court gave as a further reason why the demurrer in the Hardy case should have been sustained "that the evidence was insufficient to prove ownership of the property in a person or a corporation."

In the case at bar, it should be noted that the indictment did not charge that either Wes Hanks or Wesley Harrington was the owner of the dwelling house at the time it was burned, but that it was owned by "Ella Horton and other unknown heirs of Wesley Harrington, deceased, whose names are to the grand jurors unknown," and that the proof clearly disclosed that it did belong to Ella Horton and to another person or persons un-

known. Since the co-owners with Ella Horton were unknown, it would seem to be immaterial as to whether such co-owner or co-owners inherited their interest from Wes Hanks or from Wesley Harrington. The material fact to be alleged and proved was that the property was owned by Ella Horton and another person or other persons unknown, and that it was the dwelling house then and there being occupied by Mollie Jenkins at the time it was wilfully and feloniously burned by the accused.

We are therefore of the opinion that we are not precluded by these former decisions from holding in the present case that the proof of the ownership and identity of the property was sufficiently established. As heretofore stated, we think that both the indictment and the proof sufficiently identified the property burned, so as to enable the defendant to be fully advised as to the nature and character of the accusation against him and to successfully interpose the said indictment and record of conviction in support of a plea of autrefois convict if subsequently prosecuted for the same offense, or a plea of autrefois acquit if he had been acquitted of the charge. The judgment and sentence of the trial court should therefore be affirmed.

Affirmed.